TYSON, Executor, &c., *v.* BLAKE *et al.*

By will made in 1841, the testator directed his estate to be converted into money which he bequeathed generally to his four grandchildren, but in case one of them, Mary, should die without lawful issue, then her share to be divided among the other three, share and share alike to them, their heirs and assigns: *Held,* that there was no repugnancy between the general bequest to the grand-daughter and the provision for its diversion in the event of her death without issue.

The granddaughter being entitled to the use of the bequest for her life, the executors act properly in paying it over to her upon receiving security for the repayment of the principal upon her death without issue, with interest from that event.

APPEAL from the Supreme Court.    Upon the trial before a referee, these facts were found by him: Richard Tyson died in 1841, having made and published his last will and testament, bearing date on the 6th October of that year, by which he directed his executors, immediately after his decease, to proceed to call in and collect all the moneys that should be found due to him: to sell at public vendue all his personal estate; and, as soon as they could get a fair price for his real estate, to sell the same, giving them full powers for that purpose.    After giving a legacy of $300 to the elders and deacons of the Dutch Reformed Church at Port Richmond, in the county of Richmond, the will contained the following clause: "Item: I give and bequeath unto my grandchildren, namely, Aaron Tyson and Edwin Tyson, sons of David Tyson, deceased, and Richard Tyson, son of Abraham E. Tyson, deceased, and Mary Emeline Tyson, daughter of my son, John Tyson, deceased, the whole of the net proceeds of my estate that shall remain after my funeral and testamentary charges, and all my just debts and all other claims and demands in, upon or against my estate, and such other expenses as shall accrue in the collecting and distribution of the same, to be first deducted, with the aforesaid legacy left the Dutch Reformed Church: said net proceeds to

be divided equally, share and share alike. But in case my granddaughter, Mary Emeline, should die without lawful issue, then her share to be equally divided among my three grandsons aforesaid, share and share alike, to them my said grandchildren, their heirs and assigns." The will concluded with the appointment of Jacob Tyson, senior, and the testator's two grandsons, Aaron Tyson and Richard Tyson, as his executors. On the 15th day of November, 1841, the will was duly admitted to probate by the surrogate of the county of Richmond, and letters testamentary were thereupon granted to the executors, who assumed the duties imposed upon them, and proceeded to sell the real and personal estate. On the 22d day of October, 1842, the defendant, Edward Blake, was duly appointed guardian to Mary Emeline Tyson, and the defendant, Abraham Simonson, and one Thompson, joined with Blake in the bond given by him for the faithful performance of his duties. On the 6th day of September, 1843, the defendants, Blake and Simonson, executed to the executors a bond, in the penalty of $10,000, conditioned "that Edward Blake, his heirs, executors or administrators, shall well and truly pay, or cause to be paid, unto the above named executors, the survivors or survivor of them, or to his executors, administrators or assigns, the just and full sum of all moneys which the said Edward Blake, as guardian of Mary Emeline Tyson, one of the legatees of the said Richard Tyson, deceased, shall from time to time receive of said executors, or either of them, in case that the said Mary Emeline shall die without lawful issue, with interest from the time of her death without lawful issue as aforesaid; the amount of which moneys appears by the receipts of the said Edward Blake indorsed on this instrument." The executors made several payments to the defendant, Edward Blake, in pursuance of the condition of the bond last mentioned, all of which were indorsed on the bond. Mary Emeline Tyson died without lawful issue, February 21, 1855. The executors Aaron Tyson and Jacob Tyson died before the commencement of this action, which was brought by the plaintiff as their survivor. The plaintiff demanded of Edward Blake, before the com-

mencement of the action, the repayment of said moneys, which he refused to pay, or any part thereof.

Judgment was entered for the plaintiff, upon the referee's report, for the amount of the several payments, with interest; which judgment was affirmed at general term in the second district, and the defendants appealed to this court.

*Nathan Dane Ellingwood*, for the appellants.

*Richard Goodman*, for the respondent.

WELLES, J. The principal question to be determined arises upon the construction of that part of the will which gives legacies to the testator's granddaughter, Mary Emeline Tyson, and to his grandsons, Aaron, Edwin, and Richard Tyson. The bequest is of one-fourth of the net proceeds of the testator's estate which should remain, &c., to each of such grandchildren, the whole to be equally divided among them, share and share alike. But in case the said Mary Emeline should die without lawful issue, then her share was given to the three grandsons mentioned, to be equally divided among them, share and share alike, and to their heirs and assigns. It is claimed, in behalf of the defendants, that the limitation over of the share of Mary Emeline, in the event of her dying without issue, to the three grandsons, is void, as being repugnant to the gift to her of the one-fourth of the net proceeds of the estate. But we do not think so. The provision, called the limitation over, is nothing other than a qualification of the previous gift to Mary Emeline, and shows the intention of the testator to have been that she should take, in the contingency named, a life estate only in the legacy thus given to her. It amounted to an executory bequest of her share to the three grandsons. If she died without issue, then they became entitled to her share absolutely. If she should die leaving issue, then such issue would take her share absolutely. There is, in fact, therefore, no repugnancy in the limitation over, the language employed being merely expressive of the intention of the testator

Tyson *v.* Blake.

to make a disposition of the share of the granddaughter in the event of her dying without issue, different from what the law would make if she should die leaving issue. In the late case of *Norris* v. *Beyea* (3 Kern., 273), Judge DENIO, who delivered the opinion of the court, uses the following language: "There is, in truth, no repugnancy in a general bequest or devise to one person, in language which would ordinarily convey the whole estate, and a subsequent provision that, upon a contingent event, the estate thus given should be diverted and go over to another person. The latter clause, in such cases, limits and controls the former, and when they are read together, it is apparent that the general terms, which ordinarily convey the whole property, are to be understood in a qualified and not in an absolute sense."

Mary Emeline having died without issue, her share of the net proceeds of the testator's estate went, according to the terms of the will, to the three grandsons, Aaron, Edwin, and Richard Tyson. If these views are correct, the executors of the testator would have the right to withhold from Mary Emeline any portion of the principal of her share of the net proceeds of the estate, unless adequate security was given, or tendered, to account for the same in the event of her dying without lawful issue, together with interest thereon from the time of her death. She was entitled to the usufruct of the legacy during her life, and to nothing more. The advances to her guardian, referred to in the bond upon which the action was brought, were doubtless of the principal of her share; at least, nothing appears or is claimed to the contrary, and we are not to intend, in the absence of evidence, that the guardian would give a bond to refund what his ward was clearly entitled to receive and retain as her own absolutely. The bond was, therefore, precisely such a one as the executors were entitled to require upon advancing to Mary Emeline, or her guardian, the principal of her legacy, or any part of it.

The appellants make the further point that the action is not brought in the names of the real parties in interest. We are of the opinion, however. that the executor is the only party

who could sustain this action.   The will requires the executors, or the survivors or survivor of them, immediately after the testator's death, to convert his estate, real and personal, into money, and after payment of debts, funeral expenses, and the legacy to the Dutch Reformed Church, the whole of the net proceeds which should remain is given to the four grandchildren of the testator, as before mentioned, and in the manner before specified.   This clearly implies that the net proceeds of the estate must all come into the hands of the executors before it can reach the legatees.   The former can, manifestly, pay it out to the legatees in no other manner or proportions than the will, by its legal effect, contemplates.   Mary Emeline, as before shown, was only entitled to the use of one-fourth of what should remain of the estate, and not to the principal.   If they should pay her more than she was entitled to receive during her life, they would be accountable for it.   The executory legatees of the principal, of which she was entitled to the interest, could never look to her or her executors for such principal.   There would be no privity between them, and they could only look to the executors of their grandfather. (Code, §§ 111, 113.)

The foregoing views lead to an affirmance of the judgment below.

COMSTOCK, Ch. J.   The testator, after providing for the payment of debts, &c., gave his whole estate, as personal property, to his four grandchildren in equal shares.   As to Emeline, one of them, the will then further provided that, in case she should die without lawful issue, her share should go to the other three. The primary bequest was of an absolute estate as to all of them, although no words of succession were used.   Even in respect to land, such words are not now required in order to create a fee.   (1 R. S., 748, § 1.)   In respect to personal property, they were never necessary to pass an absolute interest.   Emeline, therefore, took under this will more than a life estate.   If she had left children, they would have taken, not as legatees of the testator, because nothing was given to them, but in succession

to their mother and according to the laws of distribution, in other words, as her next of kin.

But a general bequest of personal estate, like a fee in lands, can be subjected to a limitation over on a condition which is not too remote. If the direction is that it shall go to another beneficiary, on a contingency which must happen at the death of the first taker, the limitation is within the rules of law, and will be sustained. In this case, the estate bequeathed to Emeline was to go to her brothers, "their heirs and assigns," in case she died without lawful issue. I think this would mean a definite failure of issue, that is, a failure at the time of her death, even according to a common law construction of the language. But this is not important. The statute now imperatively requires that construction to be given. (1 R. S., 724, § 22; id., 773, § 1.) The contingency, therefore, was not too remote, and the limitation over was good. This is well settled by authority. (16 N. Y., 83; Fearne on Rem., 470, 471; 2 Roper on Legacies, 369; 3 P. Wms., 258; 2 Atk., 642; 6 Bro. P. C., 309.) The supposed repugnancy between the two clauses in question does not exist. The first is a bequest of the entire thing intended to be given. The second is a substituted one, to take effect only on a contingency which might defeat the other. If there were any express words in the will importing that the primary legatee might consume or spend the whole fund bequeathed to her, then an attempt to give the same fund to another would be repugnant to the prior disposition. But there are no such words in this will.

It was the duty, therefore, of the executors to preserve the principal of the legacy from consumption or loss, so long as it was possible that the limitation over might take effect. For this purpose, I think they might exact security before paying the sum to the person primarily entitled. But the security was voluntarily given, and this action is well brought to enforce it. The judgment should be affirmed.

    All the judges concurring,

                          Judgment affirmed.