Denio, Ch. J.
It is not questioned but that the provisions of this will, which have been condemned by the supreme court, would be valid either as express trusts or as trust powers, but for the supposed illegal suspense of the power of alienation or of ownership. As there was an absolute direction to convert the real estate into money, the provisions of the Revised Statutes, which relate to dispositions of that species of property, are those which directly apply to the case, and trusts of personal property may yet be made unless they violate some principle in law. But the rules respecting perpetuities are substantially the same as to both kinds of estates. The absolute power of alienation of real, and the absolute ownership of personal property, cannot be suspended by any limitation or condition whatever for a longer period than- during the continuance of not more than two lives in being at the creation of the estate; and where the disposition is by will, the death oí the testator is deemed the commencement of the estate. (1 R. S. pp. 723, 726, ^ 15, 41; Id. p, 773, $ 1.)
The suspension, which it is the purpose of the statute to limit, may be effected by one of two methods: either by providing for the creation of future estates to take effect upon the happening of some prospective event, the occur *72 ronce of which is essential to the vesting of such future estate, or by conveying the estate to trustees upon some authorized trust. A lawful suspension of the absolute ownership maybe effected in either or both these methods; but the period of suspension must be measured by existing lives, or by some more proximate event which may happen during life, and the persons whose lives are to furnish the measure of the suspension must be designated or referred to, so as to be capable of ascertainment in the instrument by which the disposition is made.
1. If we consider the case without regard to the trust estate in the executors, and look only to the period when an absolute interest will vest in the children, two questions will arise: first, whether they take the bequest as tenants in common; and secondly, whether the interests were vested at the death of the testator, or contingent, and not vesting until all the three children arrived at the age of twenty-one years. If the interests were joint, and if the whole remained contingent and unvested until the majority of the youngest . of the three children, the absolute ownership was suspended during three minorities, which would be illegal, and the gift was void at its creation. (1 R. S. 73, § 14; Hawley v. James, 16 Wend. 61; Coster v. Lorillard, 14 id. 265.)
But the bequests constituted the legatees tenants in common, and they took distributively and not jointly. It has long been a provision of statute law that a grant or devise to two or more persons in their own right creates a tenancy in common, unless expressly declared to be a joint tenancy. (1 E. S.-727, § 44.) The rule is different as to the estates of trustees and executors, who always hold in joint tenancy. But,we are now dealing with the interests of the defendants in the residue of the testator’s estate, and not with the rights of the trustees. The latter, if the trust was legal, were doubtless joint tenants; but the beneficiaries took the interest intended for them as tenants in common. If this was less clearly so upon the terms of the statutes, the par *73 ticular provisions of this will, show that the gifts were distributive and several, and not joint. The testator contem-' plated that, at the time of his death, these three children, or such of them as should survive him, might be of full age, and he accordingly provided, by the second clause of the tenth section, that the residue should be immediately paid to them in equal proportions, share and share alike. Then, after providing for the case of any of them being ninors at the time of his death, and, in that event, confiding the management of the property to his executors until they should all attain their full age, he directs the executors then to pay over the funds to them in the same proportions as above provided in the case of his not departing this life until the youngest one living at the time of his decease should become of age. The third clause of the same section contains further evidence of the several and distributive character of the interests of the children, in the discretionary direction to make advances to Eosine and Margaret, in anticipation of the receipt by them of their respective shares; and the sixth and seventh clauses confirm, the same position by directing marriage portions, to a limited amount, to be paid to such of the daughters as should be married while under age, with the approbation of the executors, to be paid out of their shares of the residue. And the eighth clause, which provides for the eventual distribution of the whole residue in three shares, each of these daughters being entitled to one share, is further and conclusive evidence that they took as tenants in common. It would be impossible to maintain, in the face of such language, that the residue was given to them jointly or otherwise than-as tenants in common, even if the statute were not " imperative to the same purpose. The case of Tucker v. Bishop, lately decided in this court (16 $T. Y. 402), furnishes a very apposite precedent for sustaining the distributive character of this bequest. A residue was given to trustees to be invested, one-half of which, it was said, was *74 to be for-the benefit of the children of one J. A. B. T., and the other half for the benefit of the children of one A. B. C. There were three children of the first-named parent, and six of the others, and another child was added by birth to the first-named class, after the death of the testator. There were no words defining the portions which the individuals of each class were to take in the moiety given to the class, except that it was said that each child of the respective classes was, on arrival of age, to have Ms proportion of the moiety of the residue. It was held that each child took an equal proportion of the fund.
It is urged by the counsel for the plaintiffs that the directions in the seventh clause, that the expenditures of the executors as testamentary guardians for the benefit of the children (other than the advances above mentioned), should be charged to the trust fund generally, and nob to the separate shares, shows that the fund was to be considered a joint one. But I think it has.not any such tendency. The expenditures referred to were such as would be neces sary for their education and suppoit. 'While all were living, it may be supposed that these expenditures would be substantially the same in the case of each child. Whether the moneys necessary for support were charged against the separate shares or taken from the fund generally, would noi be very important, and the direction was merely materia] for the purpose of keeping the accounts. ' The same feature existed in the case of Jackson v. Bishop above mentioned,. The whole income of each moiety of the residue was to be applied to the benefit of the children of that class, but there was no direction that it should be equally distributed among the children. But should it be considered that some degree of inequality would arise in. paying the expenses of the education and support of all the children out of this trust fund generally, it would not affect the general distributive nature of the provisions. The general effect of the bequest being to give the residue to the children in equal *75 shares, if for convenience, or any other subordinate reason, a direction was given which might burthen one or two of the shares unequally, it would not subvert, so prominent a feature of the whole scheme as that which, apportions the whole residue among the children in equal proportions. It would be simply a qualification in a single and not very important particular of the general principle of equality of interest. So far as it modified that principle it must be observed, but in all other respects the principle would be unobscured.
Independently of the trust provisions in this will, there is, I think,- no ground for saying that these legacies of shares of the residue were not vested at the death of the testator. The leading inquiry upon which the question of vesting or not vesting turns is whether the gift is immediate, and the time of payment, or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age or surviving some other person, or the. like. If futurity is annexed to the substance of the gift, the vesting is suspended; but if it appear to relate to the time of payment only, the legacy vests instanter. (1 Jarman on Wills, 760; Gilman v. Reddington, 24 N. Y. 9.) And words directing division or distribution between" two or more objects at a future time are equivalent to a direction to pay. (Jarman, p. 761.) If we test this case by this general principle, it will be apparent that the gift of the residue to the three younger children was a vested gift. Before inserting the tenth section in the will, the testator had provided, so far as he intended to do, for all the objects of his bounty, including his two oldest children. It remained to provide for the three younger ones, to whom nothing had thus far been given; and he did this by declaring, in the first place, that the whole residue of his estate should be -held for the benefit of those three" younger children, or such of them as should survive him; and in the next place he declared that it should be paid to *76 them [immediately] by the executors, unless one or more of them should be minors at the time of his death. The remaining clauses are devoted to the making of provisions for their well-being dining their minority, if they should be minors when the will took effect, and for the management of their estate in the mean time. That he considered that the estate would be theirs from the time of his death is evinced by the provision allowing the whole income, and such parts of the capital as might be necessary to be expended in their education and support, and in the direction for the advancement of portions to two of them, and of outfits to any of them in case of marriage while under age, out of their respective shares. These directions would oblige us to hold that the legacies were vested interests, if the words of direct gift had not been inserted. (Patterson v. Ellis, 11 Wend. 260.) But when we find language requiring that the residue should be held for their benefit immediately upon the testator’s death, and that it should be paid to them at once, if they were then all capable, by their age, of managing it, and superadded to these the language just referred to providing for their enjoyment of it to a certain extent before attaining their majority, I can not bring myself to doubt but that the residue vested in them in interest when the will took effect by the death of the testator, and that it was the payment only which was postponed during their minority. Assuming this to be. so, and leaving out of view, for the moment, the attempt to create a trust estate in the executors, the effect pf the will is very plain. Each of the three children took vested interests in one-third of the residue, in absolute property, subject only to an executory limitation, in the case of the death of one or more of them under age and without issue, in favor of the survivor or survivors of them. The limitation in favor of the issue of one dying under age and leaving issue is of no importance in this view of the case. It does not impair the absolute gift, for no present or prospective interest is *77 vested in the issue, for the double reason that estates tail are abolished, and that personal property was never the subject of an entail. But if this were otherwise, it would make no difference in regard to the suspense of absolute ownership. At the death of either one of the children under age and without issue, the interest of her share in the residue would immediately vest in the survivors of the three, under the executory limitation, and if she died leaving issue it would either go to such issue under the limitation in- their favor, or to her executor or administrator for their benefit as distributees, and the infancy of the issue would not suspend the ownership. In technical language the result is that each of the three children took a vested interest, at the death of the testator, in one-third of the residue of his estate, payable on their respectively arriving at the age of twenty-one years, subject to an executory limitation as to any of them who should die under age and without issue, in favor of the survivors. At the arrival of age of either of them, keeping out of view the existence of the trust, her interest would become absolute and unqualified. Whether it would then be payable, or whether she would have to await the coming of age of a younger sister or sisters would not be material, as that would not touch the question of absolute ownership, or the power of alienation. At most there was a suspension of absolute ownership for one life, or, which is the same thing, one minority of one person in being at the creation of the interest. This was once supposed to be the consequence of an executory limitation attached to a fee in favor of survivors. As it was 'Uncertain who the survivors would be until the event determined it, it was formerly held to be an interest which could not be released. But in Miller v. Emans, lately decided in this court, the question was reconsidered, and it was held that the interest of the devisee under such a limitation was one which would pass by a release. (19 N. Y. 384.) Under the authority of this *78 case, a conveyance by these three younger children, executed at any time after the testator’s death, would have passed a perfect title to the residue. The interest was not, therefore, made inalienable for any period whatever. If, therefore, the trust estate was blotted out, and the duties of the trustees were changed into powers in trust,' the result would not be an intestacy, as the supreme court has decided. The details of the management would, perhaps, be to-some extent modified; but it is difficult to see what need there is of a trust estate to effect the general purposes of this will. A legacy, or a share of a residue, may be given—payable to the legatee at twenty-one years’ of age, with a limitation over upon death within that age— without the intervention of an estate in trustees. The existence of such an estate might be convenient, but it is not essential. The legislature appear to have contemplated that trusts would be attempted to be created in cases not allowed by the system of the Revised Statutes; and for the purpose of preserving dispositions in such cases which could be effected without the existence of -a trust estate, it was enacted that in cases of attempted trusts which were unauthorized, no estate should vest in the trustees, but the trust, if directing or authorizing the performance of any act which might be lawfully^ performed under a power, should be valid as a power in trust, subject, -however, to the provisions of the article respecting powers. (1 R. S. 729, § 58.) That article defines a power to be an authority to do some act in relation to lands, or the creation of estates therein, or of charges thereon, which the owner, granting or reserving such power, might himself lawfully perform. (Id. p. 732, § 73.) But a perpetuity can- no more be created by the execution of a power than by a-direct devise or conveyance; and the period during which the power of alienation may be suspended by an instrument in execution of a power,' is to be computed from the time of the creation of the power. (Id. § 128.) In expounding and *79 declaring the effect of wills, the intention of the testator is to be carried out if, and so far as, it can bé dbne consistently with the rules of law. Nothing can possibly be clearer than that this testator intended that his three daughters should take the whole residue of his estate in equal shares, as between themselves. This-was a lawful purpose: it did not intefere with any rule of the statute or common law. • He did not, I think, intend to restrain its alienability or absolute ownership for any period, and certainly not beyond a single minority of a person in being at his death; but he carefully guarded against such a consequence by the last clause, by which he provided for the devolution of the succession without further clog or condition, in case any one should die before the cpming of age of all of them. If there, was any illegal suspension of absolute ownership, or the power of disposition, it was effected by the trust estate which he attempted to create in his executors. But if the creation of that estate would by its terms have caused an illegal suspension, it was utterly void," and must be expunged from the dispositions of the will.
If we strike out of this will the formal devise and bequest to the executors, it would have no effect upon the actual dispositions which it contains in favor of the beneficial legatees. Besides the creation of the trust estate, the testator appoints the executors the guardians of his children during their minority, as executors and testamentary guardians, and as donees of trust powers, to sell land, to expend the proceeds for the education and support of the beneficiaries, to make advances, and set apart marriage portions for them; they could do everything concerning this residue which the testator desired should be done, and so far as I can see, in the manner which he wished it to be done. If he has attempted in addition to this, to create an illegal trust estate, he has simply failed. The estate has never arisen, and there is not, I think, any argument in reason or in law, why this futile attempt should annul the otherwise legal *80 dispositions, and produce an intestacy contrary to the tes-, tator’s plain intentions. The case of Hawley v. James, (16 Wend. 61,) is an authority of very great weight upon this feature of the present discussion. There the testator, William James, attempted to create a trust term to endure until the youngest of his children and grandchildren living at the date of his will,—twelve in number,—and attaining the age of twenty-one years, should have attained that age. By means of this trust and through the agency of the trustees, all the principal objects of the testator in the disposal of his large estate were to be effected. A large proportion of the gifts depended upon the discretion of t&e trustees, to be exercised at the expiration of the trust estate. The trust term was held to be void, as suspending the power of alienation for twelve minorities, and the bulk of the estate was adjudged to have passed to his heirs and next of kin undei the general laws regulating successions in cases of intestacy But there were several legacies and devises which, though they were payable out of the trust property, and to have been paid by the trustees in their character of trustees* were yet sustained on the principle which I have mentioned. It will be unnecessary to refer particularly to more than one of them. The trustees were directed to purchase land to the value of fifty thousand dollars, out of the rents and profits of the real estate devised to them, and at the expiration of the trust term to convey it to such of the children of the testator’s son Augustus, by his then present wife, &'« should then be living, in such proportions as said Augustus and his wife, if then living, should direct, and if they should then be dead, in such proportions as the trustees should determine. This gift was adjudged to be valid, notwithstanding the invalidity of the trust estate, and an amount was directed to be reserved out of the rents and profits of the trust property, which at five per cent, would probably produce fifty thousand dollars at the expiration of the trust term, when it was to be applied to the benefit of the child *81 ren indicated, but should be subject to the power ‘ for appointing the proportions as expressed in the will. The trust term, being out of the way, the question was whether the gift itself) unembarrassed by the trust, was illegally limited. The time of payment was just as remote as the expiration of the trust estate, and the trust estate was void because it violated the statute against perpetuities. The gift would have been equally hostile to that statute, if it had depended upon a contingency to be determined only at the expiration of the trust estate, for it would have embraced the twelve minorities, and have suspended the power of alienation while they continued. But instead of being contingent, it was vested as the present bequests are; the interest vested in the children in being at the testator’s death, subject to open and let in after-born children. But being vested it was alienable, and transmissible by descent, and therefore there was no suspense of the power of alienation. A few words from the opinion of Judge Cowen, which, though not concurred in throughout, seems to have been followed as to the provisions wliich were upheld, will better explain my views. He says: “ But if it (the trust term), were void, it would only change the mode of doing the business under the will; if everything relating to the express trust be void, that certainly cannot stand in the way of the principal devise. If the trust be out of the way, then everything is alienable and subject to the devises, and these we shall see are not too remote, It would be somewhat strange if the failure of a mere form should avoid the substance; the trust term is not at all essential, it may be convenient, but surely both law and equity must be very weak, if they cannot effectuate a plain intent to devise land because the trust term is put out of the way.” (pp. 186, 187.) The court in that case carried the doctrine much further than is necessary to preserve the bequest of the residue in this case. It was a judgment of the court of last resort, and was elaborately argued and discussed by the judges, and involving as *82 it did, interests of a very large amount, it ought to be considered as settling the law upon the point we are considering, if there could otherwise be any doubt concerning it.
My conclusion is that the bequest of the residue, considered independently of the express trust, was not liable to the objection that it created a perpetuity forbidden by the statute, and that it was in all respects valid; and, moreover, that the attempt to create a trust estate, if ineffectual, did not affect the bequest.
2. But I am not satisfied that the trust estate was illegal. I have already said that its objects were not denied to be such as are authorized by the 55th section of the article relating to trusts in lands. But it being, by force of the power in. trust to convert the land into money, a trust of personalty, it was not within the influence of that article, but was valid, if not opposed to some other rule of law. But the statute against perpetuities was applicable to it, and I am now to inquire whether it violates that statute. The executors were directed to hold, use, and manage the residue of the estate until all the three younger children, or the survivors or survivor of them should become of age. If there were nothing else in the will, I do not see how the disposition could be sustained. But the last clause of the tenth section directs that if any of the three younger children should die before becoming entitled to be paid in full, leaving lawful issue, the amount coming to her for her share should immediately belong to and go to such issue; but if she should die without such issue, then her share should go to the survivors or survivor of the said three younger children. This provision, though a material qualification to the one which declared the duration of the trust, is in no just sense repugnant to it. It is the form generally used to annex an executory devise or bequest to a gift which would otherwise be absolute. Taken together, the substance of the disposition is that the whole residue is to be held by and be subject to the management pf the trustees *83 until the youngest child shall come of age, unless any of them should die under age; but in that event, the share of the one so dying under age is to be Separated from the trust estate, and be p.aid immediately to the issue of the deceased child, if she shall have left any; and if not, to her surviving sister' or sisters. I do not, therefore, find it necessary to resort to the rule, sometimes adopted in the case of irreconcilable provisions in a will, of considering the last clause in local position as expressing the last volition of the testator, and as superceding the other. This rule should only be applied where it is impossible to reconcile the two provisions with each other, and never until every attempt to give to the whole a sensible construction has failed. (1 Jarman 415.) One need only to look into any treatise on wills or devises to find numerous examples of a disposition which would, on its face, carry an absolute estate, but which is subsequently cut down into a defeasible interest by another clause. There is nothing more repugnant in the two clauses referred to in this will than is found in a common mortgage, which usually sets out with an unqualified grant of the whole estate in fee; but is subsequently qualified by a defeasance by which it is to become void on the payment of the money. Cases of devises and bequests absolute by the primary clause, but which are in a subsequent part qualified by a contingent executory limitation, are frequent in our own reports. (Norris v. Beyea, 3 Kern. 273; Tyson v. Blake, 22 N. Y. 558.)
Bearing in mind what has been said as to the divisible character of the bequest of the residue, and the fact that the legatees took their interests in the residue as tenants in common, the case is relieved of all difficulty, unless one arises out of a doctrine to which I shall presently refer. Tailing up the share of each child separately, we are to inquire whether the share is tied up so that no one has the absolute ownership during more than two lives. Take the first of the three daughters: If she shall die before her *84 two- sisters come of age, leaving issue, her share passes to such issue, or to her personal representatives, and is taken wholly out of the scope of the trust. But if she die without issue, her share goes to the survivors. If the second one subsequently die without issue, her share will go to- the single survivor. But what will become of her part of the share of her sister who died before her? If that will go to, her personal representatives, there is no embarrassment. The two shares have been extricated from the trust, and as to them there is no further suspense of ownership, and the time of suspension has not exceeded that allowed by the statute. It has embraced only a single life. The third share will be liberated from the trust when the last legatee comes of age, or at her death before that period. But if the law is that the share which devolved upon the survivors when the first legatee died remained bound up in the trust, and if, upon the death of the second, it was passed to her sole survivors as a part of the trust estate, and she was still under age, then her estate is not released until the expiration of two lives and one minority after the taking effect of the will by the death of the 'testator; and the rule seems to be well established that if the estate will not vest within the statutory limit of time, in any supposable order in which the legatees may die, there is an illegal suspension. (Hawley v. James, supra.) The question, therefore, is whether the accrued shares, arising upon the death of the daughter who first deceased, go to her survivors absolutely or continue to be enveloped in the trust estate; and upon that question I have entertained the only doubt which has occurred to me in examining this case. The words in the third clause are very pointed to the effect that the trust is to last until the youngest daughter comes of age, or until the survivors or survivor of them shall do so, and that when that happens, the funds are to be -paid to the daughters or the survivors or survivor. This would seem to imply that if some one *85 or more should die before the youngest one came of age, the trust was still to continue though two lives had been spent. But the language is capable of the construction that these words survivors and survivor, as here used, refer to those who shall have outlived the testator. The next preceding clause shows that he supposed that they might not all survive him. The language, until you come to the last clause, seems rather to contemplate that all who should survive the testator would live until the youngest' came of age, and then that last clause is inserted to provide, for the •first time, for the care of some of those who should outlive him dying before the time of final division. It is impossible to give the provision as to the endurance of the trust its full and unqualified effect consistently with the last clause, for by that, if any one dies leaving issue before the time for distribution, that is, the full age of all of them, her share is certainly to be relieved from the trust, for it is to be immediately paid to her issue, after which the trustees would have no control over it. Again, by the final clause, upon any one dying before the time of distribution, it is her share which is to go to the survivors or survivor. By the strict language, therefore, upon a second death happening, it is the proper share of the one so dying that is to go to the sole survivor, while nothing is said respecting an interest which had accrued to that second deceased daughter upon the death of the first. Hence, I think the literal import of the language would not retain an accrued interest, arising upon the death of any of them without issue, within the scope of the trust. There is nothing in terms showing that such accrued interest should not vest absolutely in the survivors or survivor, to whom the Will declares it shall go.
But if we look into the English books, and I have found nothing in point in this state, the case is not entirely clear. The cases are numerous and not quite harmonious. In ex parte West, (1 P. Williams, 174, note, anno, 1784,) a *86 testator gave to three minor children “ ¿61000 each, the interest to be added to the principal yearly, until they shall respectively attain the age of twenty-one years; and in case one of them shall die before that age, then to the survivors.” Two of them died at different times, under age. The question was whether the part of the share of the one who first died which survived to the one who died next, survived again to the third, or whether it was only the original share of the .one who died Secondly which went to the ultimate survivor; and the Lord chancellor held that the half share did not again survive. This was a summary decision in bankruptcy, but the question was afterwards brought up by bill, and it was heard before Sir Loyd Kenyon, master of the rolls, who concurred with the lord chancellor and determined that the moiety of the legacy of the first deceased which survived to the second, vested absolutely and did not survive on his death to the last survivor. The case of Crowder v. Stone came before Lord Chancellor Ltndhurst, in 1829. A testator gave to his executors several sums in the public funds in trust to pay the- dividends to his wife and brother during their lives and the life of the survivor, after which the trustees were to sell the stock to pay the proceeds to a nephew and four neices named, in equal shares; but if either of them should die without issue before their shares became payable, then the share of those so dying should go to, and be equally divided between and among the survivor and survivors of them, share and share alike. One of the neices alone survived the testator’s wife ánd brother, and two of those who had died did not leave issue. The question was as to the accrued share of the one first dying which vested in the other one who afterwards died without issue before the time of payment,—whether it went over again, under the words of survivorship, or vested absolutely in the one so secondly dying without issue, and it was held that it did so vest, and did not again survive. The lord chancellor *87 relied upon ex parte West, above mentioned¡ as an authority for the decision, (3 Russell, '217.) In a case decided in 1834 by Sir John Leach, master of the rolls, it appeared that three children became entitled under the marriage settlement of their parents and a testamentary instrument of appointment executed by their mother, to a sum of ¿62000 in the public funds, the dividends, however, payable to their brother for life, and after his death to be expended towards their maintenance and education, and to be divided among them on their respectively attaining twenty-one, or, as to the daughters, their marriage. Two of the children died successively after attaining full age, in the lifetime of their father, and the other survived. The plaintiff was the administrator of the one who died secondly, and the question was whether he was entitled to any part of the ¿62000 or whether it all vested by survivorship in the child who was yet living. It was decided that the plaintiff was entitled to so much as accrued to his intestate in her lifetime by the death of the child who first died, that being vested in her absolutely, though the original share of his intestate went over by survivorship to the last survivor. (Bright v. Rowe, 3 Mylne & Keene, 316; 9 Condensed Eng. Ch. Rep. 54.)
If the foregoing cases are good law, the trust in question in the present case, if valid, did not suspend the absolute ownership of either of the three shares of this residue for any period beyond the life of the daughter to whom it was given. Upon the death of the first of the three daughters, who shall die without issue, her share would go to the survivors absolutely, and upon the death of the second one who shall die without issue, her proper share will go to the survivor, but her part of the accrued portion, if not aliened, will go to her personal representatives, and will be thus taken out of the scope of the trust. It is proper, however, to say that there is a class of cases in some of which the reason of the rule referred to has been qiies *88 tioned, and, in some others, distinctions have been acted upon which at first view seem not very consistent with the rule itself, which rule has, however, always been conceded to be. the law. (Worlidge v. Churchill, 3 Bro. C. C. 465; Pain v. Benson, 3 Atk. 78; Pope v. Whitcombe, 3 Russ. 224; 3 Condensed E. C. R. 323; Eyre v. Marsden, 2 Keene, 564; Barker v. Lea, 1 Turn. and Russ. 413; 11 Eng. C. R. 224). In the case in Atkins, the bequest was of all the testator’s personal estate to five brothers and sisters, and brothers and sisters-indaw, after the decease of the testator’s father and mother, to whom- the interest was to be paid during their respective lives, and the clause^ of survivorship was that in case of the death of any of the five legatees “ before me, or the survivors of my father and mother, I do appoint his, her or their shares to be divided among the survivors of them.” One of the legatees died in the testator’s lifetime, and two of them after-wards, but in the lifetime of the testator’s mother. Lord Chancellor Hardwick® considered the shares of all the deceased legatees to have, in substance, lapsed, and to have fallen into the residue precisely as though they had all died before the testator, and that the fund to be distributed was only ascertainable after the death of those entitled to the interest for life. He insisted that his judgment was not a departure from the general rule, which he said was .as follows: “ When a man gives a sum, suppose ¿61000, to be divided among four persons, as tenants in common, and that if one of them die before twenty-one or marriage, it shall survive to the other. If one dies and three are living, the share of that one so dying will survive to the other three; but if a second dies, nothing will survive to the remainders but the second’s original share; for the accruing share is as a new legacy, and there is no further survivorship.”
The case cited from 3 Brown’s Chancery Beports is, in some respects, like the present. It was a devise of all the *89 testator’s real and personal estate to trustees in trust to sell and convert it into money, and with the proceeds to pay the debts .and purchase an annuity for one person, and to invest the residue in government stocks in trust for his four children named, to be divided between them on their attaining twenty-one; but if any of them should happen to die before attaining such age of twenty-one years, then such deceased child’s share to go to the survivors and survivor of them." The interest was to be applied to their education, &c., during minority; “ and in case all the said four children should happen to die before attaining the age of twenty-one years, and leave M. A. (a third person living), then he directed the trustees to pay her the interest of such trust money from time to time as it should come due, and .after the decease of all”;—that is, the four children and M. A.—he gave and bequeathed the said trust money to the children of his late uncle, Stephen Loudon-. All the four children, except the plaintiff, having died, he filed a bill against the executors, and the representatives of a deceased brother and sister, and the main question was whether the shares of the deceased children, which had vested in the one who died, survived to the plaintiff; and it was held that they did. The case was heard before Mr. Justice Bulleb, sitting for the Lord Chancellor, who, admitting the authorities to establish the general doctrine against the further surviving of accrued shares, placed his judgment upon the words trust moneys, which, he said, meant the whole estate, and upon the bequest over of these moneys upon the death of all the children under age, which constituted, as he thought," the whole as an aggregate fund. In the case we are considering, it is certain that there was no determination of the testator that the whole residue should be kept together as an integral fund; for upon the death of any of the legatees before the time of distribution leaving issue, her share was to be taken out of the fund and be given to her issue, and there was no bequest of the whole fund, or *90 of anything to another person on the death of all before the distribution. ■ The other cases are distinguished by the circumstance that the sharers of the fund were to be ascertained at the termination df a prior estate or interest, and the clauses of survivorship meant, in substance, that what would otherwise' be the shares of those.who should die before such ascertainment should fall into the fund to be distributed among those who should prove to be the real beneficiaries. There was, in effect, no survivorship provided for, but a direction that those who died before the expiration of the prior estate should not be participants in this fund "to be divided.
My conclusion upon this feature of the case is that the accrued shares, if any of these legatees should die without issue before they all arrive of age, would not be subject to any further devolution by survivorship, but would vest absolutely in the survivors.
It is proper to remark that none of the English cases to which I have referred involved any question under the law of perpetuities. None of the dispositions were questioned as involving an illegal suspense of alienation or ownership. By the common law, property held in trust was not inalienable. That consequence is produced here by the provisions of the Revised Statutes which declare that a conveyance by a trustee, in contravention of the trust, is void: and that the beneficiaries of a trust to receive and apply the rents and profits or interest cannot alienate their interest. It is here safest to render the disposition of the residue contained in this will void¡ because the whole • fund is to be kept together and rendered inalienable during the existence of three minorities. Before we declare that result we ought to be quite sure that such is the effect of the trust. As I have said, I think it. is not; though I admit that there is more room for controversy upon that point than upon the position first stated, namely: that admitting the trust *91 to be void, the legacies would be well given and would involve no illegal suspense of ownership.
I am, therefore, for reversing the judgment of the supreme court, and of adjudging that the dispositions of the will of Charles E. Everitt are valid and effectual dispositions of his estate.
The judgment of the supreme court having been favorable to the plaintiffs, I am not for giving to the defendants the costs of his appeal, as against the plaintiffs. The executor will be entitled to be allowed, as expenses, such costs as he has incurred in settling his accounts. The award of costs in the supreme court fails with the judgment of reversal. The order for judgment to be settled b.y one of the judges of this court.
Mullin, J.
The important question in this case is, in whom did the title to the residuary estate vest, under the tenth clause of the will on the death of the testator? If in the minor children mentioned in that clause, then the judgment below must be reversed; if in the trustees, it must be affirmed.
The tenth clause contemplates and provides for two contingencies; 1st. The death of the testator after the youngest of the three children mentioned in that clause and then living, has attained the age of twenty-one years. 2d. His death while any of said children were minors.
The death occurred while all three of said children were minors, and hence, the provision made for the second contingency is the only one necessary to be considered in deciding the question arising on this appeal; That provision is, in substance, that the trustees are to hold, use and manage the residue of the estate until all of said three children, or the survivors or survivor of them shall become of age;—then to pay over such funds and their accumulations to them or the survivors or survivor in equal propor *92 tionSj share and share alike, until after the youngest'living at his death should become of age.
By the third clause of the will the testator has expressly given all his estate to his executors in trust, for the uses and purposes of his will. These purposes were to pay his debts and personal expenses,'—erect a monument—to pay legacies to sundry persons named, and amongst them, to his two eldest children, and then the rest and residue under the tenth clause above mentioned. It will be seen that the trust under which the executors hold the estate in question is not created by the tenth clause of the will, but by the third. But as it is by the tenth clause that the trust is extended to the residue of the estate, beyond the time when as executors, they should have paid the debts and legacies and performed the other duties imposed upon them, by the clause of the will preceding the tenth, it becomes necessary to enquire whether the trust as to the residue is a valid one, or whether it is not valid:, because it suspends the power of alienation beyond the time limited in the statute.
It is conceded that if the absolute power of alienation is suspended by this clause beyond two lives in being at the death of the testator it is in violation of the statute and void.
By the very terms of the clause in question, the trustees are required to hold and manage the estate until the youngest of the three children named in it attains its majority. If, by this provision, the interest in the fund does not vest in the children until the youngest becomes twenty-one years of age, the trust is utterly void. But if the interest vests in the children on the death of the testator, but the fund is not payable to them until the happening of the event mentioned, then the power of alienation is not suspended and the trust (if it is one) is valid.
The decisions have been so numerous and the rules of construction alluded to have been so long and so rigidly *93 adhered to, that it is unnecessary to cite authorities in support of them.
The inquiry then is reduced to this: Did the shares of the children in the residuum of the estate vest in them on the death of the testator, or was • the vesting postponed until the youngest came of age?
The first and most important duty devolving upon judges in the construction of wills is to ascertain the intention of the testator, and when ascertained, effect is to be given to it unless the language of the instrument precludes it. .
To arrive at the intention of thé testator in regard to the provisions for the minor children, it will not be qecessary to look beyond the tenth clause, as the other clauses can have effect, whatever may be the construction given to the tenth clause; but, as I will afterwards show, the tenth clause cannot receive the construction contended for by the respondent’s counsel without rejecting altogether the ninth clause, or, by retaining it, do injustice to the minor children provided for in the tenth clause.
1. It was the manifest intention of the testator to give to each of the three children one equal third part of the residuum of his estate, or, as he expresses it, “equal proportions, share and share alike.”
2. The division into shares is recognized and treated as having effect before the youngest child becomes twenty-one. It is provided that inasmuch as Eosine is considerably older than the others, and as it might happen that she ought not to be compelled to wait for her share until the others become of age, therefore the executors were authorized after her majority to make advances to her in anticipation of the receipt by her of her share. This provision is wholly inconsistent with an intention to postpone the vesting of the share until the majority of the youngest, for two reasons: 1st, Because payment maybe actually before; and 2d, the accumulation of the fund for the benefit of those living at the time the youngest comes of age is defeated, because it *94 will have been previously paid over to those who were not intended to have any interest in it, according to the general scope and object of the" tenth clause; or, to express the idea somewhat more clearly, if the object of the testator was to have the residue of the estate retained by the executors until the youngest came of age, and that no interest should vest in either until the happening of that event, it would follow that he must have intended that the child or children who should be living at that time should take the whole estate, unless the deceased should leave issue, and that the one dying should have nothing beyond a mere support, this object, I repeat, is defeated by permitting any one of the three living to have his or her share after majority or marriage, and before the youngest comes of age. I consider that it was competent for the testator to forbid the vesting until the happening of the event provided for, and in the meantime to authorize the payment of a part of the estate, to him or her. But the question is not what he might do; it is what was it his intention to do. And I insist that when he authorized the payment of a part of his. estate to one of the children to apply on its share before the happening of the event when it becomes entitled to full payment, an intention is clearly manifested that the division into shares should take effect at his death, so that each child had a share on which payment could be made.
3. The provision- that the executors might a'dvance and pay $500 on account of her share to either of the children marrying before she became entitled to her share, in order to enable her to procure an outfit, manifests an intention not to postpone the vesting of the interest in the children beyond his death.
4. The intention not to postpone the vesting until the youngest came of age is most clearly demonstrated in the last provision of the tenth clause. It is there provided that in case any of said three children should die before she became entitled to be paid in full the amount coming *95 to her for her share, and should leave lawful issue, her share shall immediately belong to and go to such issue; but if she dies without issue, then to the survivors. This clause is wholly incousistent.with an intention to give no vested interest, in the residue except in such of the three children as should be living when the youngest o.ame of age. By this provision the survivors can take but one-third, or it may be two-thirds, as the other share or shares are vested in the representatives of such as may be deceased.
I admit that the testator had the power to make all these provisions and yet the interest in the several shares not vest in the children at his death. But the question is not one of power, but of intention. Would he have made these provisions if. his intention had been that the children should have no vested interest in any specific portion of the estate at his death.
The general intention would seem to have been to give to each of said minor children one-third of the residuum of his estate, as it would be at the time when the division should be made;—that is, so much as should remain after supporting all the children during their minority. Any advances made to either after coming of age, and all other advances, except for support and education, are required to be deducted from the share of each. In other words, payment .of the shares-was not to be fully made until the youngest attained its majority. This intention contravenes no statute or provision of law, and effect should be given to it if possible.
It remains to inquire whether the language of the will will allow effect to be given to the intention.
The question is not whether the language will bear some other construction—a construction which will defeat the intention or render the provisions of the will illegal and void, but whether it will permit a lawful intention to have effect.
The executors are required in the event of the testator’s *96 dying during the minority of any of said three children, “ to hold, use'and manage the residue and remainder of the said trust funds until all of my said three younger children, or the survivors or survivor of them shall become of age, and then to pay over such funds and the accumulations thereof, to them or to the survivors or survivor of them in equal proportions, share and share ‘alike. It may be conceded that this language, standing by itself, authorized the executors to hold in trust for a longer period than two lives in being at the death of the testator, but that is not the question. The intention being not to suspend the power of alienation unlawfully, is the language susceptible of a construction that will carry out such intention? Nothing is clearer than that if the power to hold and manage said fund is, as to the portion belonging to the three children, a mere power in trust, there is nothing in the clause in contravention of the statute, and it is a power in trust, if the interest vested in the children on the death of their father. I do not find anything in the will inconsistent with such a view of its provisions.
The right of the executors to retain in their hands the shares of said children and to invest them from time to time, for a period beyond two lives in being at the death of the testator, and then to pay over the same to the children, is not in violation of the statute, because there are at all times persons in being by whom a valid legal title to the property may be conveyed. (Gilman v. Reddington, 24 N. Y. R. 9.)
I have already alluded to the various provisions which speak of the interest of the children as shares belonging to them before any of them attain their majority; and although these shares are spoken of in some cases as shares which will belong to them at a future day, yet these expressions are consistent with an interest vesting at the testator's death, and in the last paragraph of the tenth clause the testator shows that whatever terms he may have used *97 to express his intention in previous clauses, in that he understood that the shares would vest at his death, and that payment only was suspended until the youngest attained its majority. He declares that in case any of said children should die before she shall be entitled to be paid in full the amount coming to her, her share shall go to her issue, if she shall leave any. It was payment only that was future; the share was to vest.
It seems to me quite clear that the three minor children are entitled to the residue of the estate; and that the judgment of the court below' should therefore be reversed, and a new trial ordered—costs to abide the event.
If the tenth clause should be held void, the two older children of the testator would come in for shares of the residuary estate; and as they have each $500 by the ninth clause, it would follow that an unequal and inequitable distribution of the estate would result. To remedy this, the court below was compelled to put the elder children to their election—thus nullifying wholly the ninth clause in the event they elected to take as next of kin.
It is possible that my construction of the will may work as great, or even greater injustice;- but it has one virtue, if no .other, that it permits the testator to distribute his property in accordance with his views of the claims of his children upon him, and gives effect to every clause of his will and does not interfere with any.
Selden, Ixgraham, and Davies, JJ., concurred.