In the Matter of the Estate of PAULINE VON B. MOELLER, Deceased.

Surrogate's Court, New York County, December 15, 1942.

*Hamilton and Freeman* for American Surety Company of New York, petitioner.

*George W. Tucker* for Anita Moeller Thoman, as administratrix c. t. a., respondent.

*Chambers, Clare & Morris* for Felix A. Muldoon et al., as trustees, respondents.

*Thomas Keogh* for Emil N. Baar, as trustee, et al., respondents.

*Glass and Lynch* for Sterling National Bank and Trust Company of New York, respondent.

*Charles H. Kriger* for Joseph W. Ferris et al., as trustees, respondents.

*Edward M. Keenan* for Louis H. Pink, Superintendent of Insurance of State of New York, respondent.

*Henry Lichtig* for C. Lionel Marcus, as trustee, respondent.

*Wagner, Quillinan, Wagner & Tennant* for Aaron Rabinowitz, et al., as trustees, respondents.

*Bleakley, Platt and Walker* for trustees of Series 9418–19 Westchester Title and Trust Company, respondent.

DELEHANTY, S.   The will of Henry Moeller who was the husband of Pauline von B. Moeller provided in part:   " Third: I also give and devise to my said wife the use during her natural life of one-third of all my real property, wheresoever situated, and upon her decease I give and devise said one-third interest in my real property in equal shares to my children who may be living at my decease, and if any of my children be deceased at the time of my death leaving issue, said issue shall take the same share as their parent would have taken if living."

His will further provided that the executors might sell the real property notwithstanding the devise in the third paragraph. In the event of such sale the proceeds were to be subjected to the provisions of paragraph third.   Under the power of sale granted to the executors the real property which was subject to the life estate of Pauline von B. Moeller was sold from time to time and the executors received the proceeds.   They paid one third of the proceeds over to the life tenant, Pauline von B. Moeller, after the latter, as principal, and the petitioner in this proceeding, as surety, had executed to the executors for the benefit of the remaindermen bonds in amounts equivalent to the moneys so paid over.   Each of the bonds recites the source of the moneys as the widow's share of the proceeds of the real property and in each instance the amount for which the bond was written is stated to represent such one-third share and it is described as money " to the use of which she (Pauline von B. Moeller) is entitled during her natural life."

Between the 21st of October, 1925, and January 10, 1928, bonds in an aggregate sum in excess of $300,000 were thus executed by the deceased Pauline von B. Moeller and the petitioner in this proceeding to cover the proceeds of such sales delivered to the life tenant.   Upon the death of Pauline von B. Moeller the remaindermen sued upon the bonds and procured a judgment against the surety for an aggregate sum in excess of $340,000, which the petitioner has paid.   The litigation centered on the question whether the bonds as written obliged the surety thereon to pay a fixed sum of money in all events to the remaindermen or whether the obligation of the bonds was to assure a correct accounting in behalf of the life tenant for the funds delivered to her.   The remaindermen succeeded in establishing the fixed monetary liability of the surety for which they contended.

Now that the surety has paid its obligation on the bonds it comes into this court under the provisions of section 206-a of the Surrogate's Court Act and demands that the property in

which the deceased had a life estate be turned over to it. The representatives of the deceased do not question the identity of the property recited in the petition as property in which the money proceeds of the real estate of Henry Moeller were invested from time to time by deceased. Her representatives nonetheless assert that the property must be administered in the estate of deceased. The contention is that the estate is insolvent and that a recognition of the claim of the surety would constitute a preference to it. The practical effect of the administration of the property through the estate of deceased would be to subject it to commissions and to other administration expenses. The surety insists upon its right to receive the identifiable property which constituted the corpus of which deceased had the life use. It no doubt intends under its contract with deceased to file against the true assets of deceased a claim for any balance found to be due to it after it has applied to the satisfaction of deceased's liability to petitioner under the bonds given by it the property now claimed and all other property of deceased which it possesses. The indebtedness of deceased to the petitioner is readily admitted by the representatives of the estate, and they assert such indebtedness as part of the body of claims which render deceased's estate insolvent.

Since the wife of Henry Moeller was entitled only to the usufruct of the real estate or (in the event of its sale) to the life use of its proceeds, it was entirely correct procedure for the executors of Henry Moeller to exact from her a bond to assure them against liability to the remaindermen. The case of *Tyson* v. *Blake* (22 N. Y. 558) dealt with a comparable situation. There the will gave a legacy to a granddaughter and provided that if she should die without issue her share would pass to her brothers. The court construed the gift as entitling the granddaughter " to the usufruct of the legacy during her life, and to nothing more." Speaking of the liability of the executors of the testator in the cited case and the rights of the legatees who became entitled to take because the granddaughter died without issue, the court said that the granddaughter " was only entitled to the use of one-fourth of what should remain of the estate, and not to the principal. If they [the executors] should pay her more than she was entitled to receive during her life, they would be accountable for it. The executorial legatees of the principal of which she was entitled to the interest, could never look to her or to her executors for such principal. There would be no privity between them, and they could only look to the executors of their grandfather."

The cited case was considered in *Smith* v. *Van Ostrand* (64 N. Y. 278, 282, 286). The court there construed the will of Garret I. Smith as giving to his widow not only a right to the usufruct of a fund for her life, but also a right to invade the fund. The executors without exacting security had delivered the fund to the widow who had bought with it some United States bonds which she held up to her death. The defendant in the action — a stranger to the will — became possessed of the bonds apparently as agent of the widow. The children of deceased who were the remaindermen sued this person for the bonds, and at the trial the court dismissed the action. A motion for a new trial was made which was denied. An appeal was taken to the General Term which affirmed and directed judgment for dismissal of the complaint. The case was in the Court of Appeals on the question whether the plaintiffs had an interest in the particular security which the widow had bought with the funds in which she had a life use. After discussing some questions not here pertinent, the Court of Appeals said (page 285): " The only remaining questions are, whether, upon the averments of the complaint, the title to the bonds, in which the legacy was invested, passed to the remaindermen on the death of the widow, and whether this action is properly brought by them, or should have been brought by the executors of Garret I. Smith." The court held that the remaindermen were proper parties-plaintiffs. It cited (at p. 282) *Tyson* v. *Blake* (*supra*) as authority for the proposition that the executors of Garret I. Smith could have exacted a bond from the life tenant. It held (p. 286) that, notwithstanding *Tyson* v. *Blake* (*supra*), the remaindermen — there being no bond — could sue for the property in which the fund was invested since they were " the real and only parties interested therein." Accordingly, the lower courts were reversed.

The principle established by the two cases cited was applied in *Peck* v. *Smith* (227 N. Y. 228). In that case the life tenant had been given a life use of a fund and the fund had been paid to her without bond. The widow purchased with the money some bonds and mortgages. These later she assigned. The trial court had said that such assignment was in return for an enforceable agreement by the sister to support and maintain the life tenant. The Appellate Division reversed this finding and held that the transfer was for the purpose of defeating the rights of the remaindermen. The Court of Appeals did not disturb the findings thus made, but nonetheless reversed the Appellate Division and affirmed the dismissal of the complaint. The

dismissal by the Court of Appeals was based, however, on a ground other than that upon which either of the courts below had based their respective judgments. In the Court of Appeals it was held that the executors of the original estate of Albert Peck whose widow was the life tenant had no right to maintain the action to recover the securities in which the fund had been invested. The court said in respect of the widow: '' She became a trustee for the benefit of the remaindermen  *  *  *. When Mrs. Peck died whatever portion of the amount remained belonged to the legatees named in the twenty-fifth clause of Mr. Peck's will  *  *  *. Whatever right of action there was accrued to the legatees; the executors of Mr. Peck's estate had none under the circumstances here developed ''

The purport of these cases is that while executors of a testator may demand a bond from a life tenant, and, if demanded and given, may sue upon it, there is a relation of trustee and *cestuis que trustent* established between the life tenant and the remaindermen and the latter are the owners of the corpus of the fund after the life tenant's interests therein have been satisfied. It follows that, when Pauline von B. Moeller died, the remaindermen entitled to the fund under the will of Henry Moeller could have demanded the securities in which the life tenant had invested the fund and could have sued in their own right to recover such securities. It is clear on the facts developed in this proceeding that the securities had largely depreciated and that the remaindermen elected to proceed under the bonds which, happily for them, were found by the courts to have required the payment of an irreducible sum of money. The remaindermen have, of course, been completely satisfied by their judgment and its payment.

The authorities discussed make clear beyond question that the title of the life tenant in the fund and in the securities in which it was invested from time to time was extinguished by her death. Her executors have no better title to the securities than had she. As the cited cases show, any one who came into possession of these securities was subject to an action to compel their delivery. In the opinion of the court, that is the situation in which the executors of Pauline von B. Moeller stand. They, at least, have no interest whatever in this property and, like the defendants in the cited cases, are subject to judgment directing a turnover to the person entitled thereto. In no case can these securities be dealt with as assets of the deceased life tenant and be subjected to the claims of her general creditors. The form of action instituted by the petitioner under section

206-a of the Surrogate's Court Act is the equivalent of an action at law or one for an accounting which was maintainable prior to the enactment of this provision.

The answer interposed by the respondent denies the title alleged by petitioner; asserts title to the securities as estate assets; asserts that the general creditors of Pauline von B. Moeller are interested parties; asserts that certain of the investments of the fund are in the possession of petitioner already; and, in general, asserts that because the estate of deceased is insolvent the property in controversy must be routed through the estate and be subjected to her funeral expenses and the usual administration expenses, and then be distributed *pro rata* to the creditors of whom the petitioner is conceded to be the largest. The further suggestion is made in the answer that since the time has lapsed for the representatives of the Pauline von B. Moeller estate to answer the complaint of the remaindermen in the action which resulted in the petitioner's having to pay over $340,000 to the remaindermen, there is no right in petitioner to recover the assets in controversy. The action at law on the bonds was severed and the estate of deceased became a bystander while the issue was tried between the remaindermen and the surety. It is not clear what the estate representatives argue to be the effect on a question of *title to a trust fund* of the lack of finality in respect of the deceased's liability on the *bonds*. The surety now has all the rights of the remaindermen *in the trust fund;* the *estate* never had any right in or to it.

On the record the court holds that the petitioner now has the sole right to the property in controversy. The court holds, under the cases cited, that such property is not owned by the estate of Pauline von B. Moeller and that so much of it as is in the possession of the estate representatives must be delivered over to the petitioner.

Submit, on notice, decree accordingly.