In the Matter of the Estate of CONRAD WERNER, Deceased.

Surrogate's Court, Jefferson County, January 30, 1932.

*William K. Mott* [*Arthur L. Chapman* of counsel], for the administrators c. t. a., Alfred D. Deibert and Hattie M. Werner, petitioners.

*Cobb, Cosgrove, Harter & Wright*, for Edward L. Pohl, individually and as executor of Mary J. Werner Pohl, deceased.

GRANT, S. The 2d, 5th, 14th and 16th paragraphs of decedent's will, which was executed February 9, 1887, and admitted to probate February 28, 1887, are as follows:

"*Second.* I give, devise and bequeath all my real estate, consisting of a house and lot in the village of Philadelphia, one farm in the town of Philadelphia and one farm in the town of LeRay, all in the County of Jefferson, New York to my beloved wife Anna Werner, (subject to the payment of the gifts and legacies hereinafter given to my children,) for and during the term of her natural life, together with all the rents issues and profits of said real estate, and on her death I give and devise and bequeath the said real estate or such thereof as may then be remaining to my children Mary J. Werner, Hattie M. Werner, George T. Werner and Ruth M. Werner to be equally divided among them share and share alike, the children of a deceased child taking the share their parent would have taken if living."

"*Fifth.* I direct my executors hereinafter named to convert all my personal property, except such as is hereinafter mentioned, into money as soon as convenient and for the benefit of my estate, and invest the same in some good interest bearing security or securities — taking the same to themselves as executors, and such security or securities I give and bequeath to them in trust for the following uses and purposes: The income therefrom I give and bequeath to my said wife for the purpose of enabling her to keep and maintain the house and home as above provided, and the principal thereof to be used in paying off the said legacies I have hereinbefore given to my said children — the balance thereof if any to be kept invested during the life of my wife she receiving the income therefrom, and on her death the principal to be divided equally among my children in the manner mentioned in the second provision hereof."

"*Fourteenth.* Should any of my said children die without leaving issue before he or she receives his or her full share of my estate as above provided, I give devise and bequeath the share of such child to the survivors to be divided equally among them in the manner mentioned in the second provision hereof."

"*Sixteenth.* To my executors hereinafter named I give full power & authority to sell & convey such of my real estate as may be necessary to carry into force and effect the provisions of this my will."

Decedent was survived by his widow, Anna Werner, and his four children, Mary J. Werner, Hattie M. Werner, George T. Werner and Ruth M. Werner, mentioned in the said 2d paragraph of said will. The daughter Mary J. Werner thereafter married

and became Mary J. Werner Pohl. The daughter Ruth M. Werner also married and became Ruth M. Werner Deibert. The widow, Anna Werner, continued to live until July 11, 1929. She then died, survived by her said four children. Mary J. Werner Pohl died August 24, 1929, without leaving issue and before she had received any of the property bequeathed and devised to her in and by the 2d and 5th paragraphs of her father's will. She left a will in which she gave $1,000 to her sister Harriet M. Werner, and the residue of her estate to her husband, Edward L. Pohl, who survived her. The property of the Conrad Werner estate remaining upon the death of the widow, Anna Werner, amounted to $7,974.14, consisting of bank deposits, real property mortgage, interest and rents. This came from the disposal of the real property under the power of sale given by the testator in the 16th paragraph of his will, as the testator died possessed of practically no personal property.

The question here is, whether the interest in the property of the Conrad Werner estate to which Mary J. Werner Pohl became entitled upon the termination of her mother's life use, passes as a part of her estate for distribution under her will, or whether it passes to the surviving children of Conrad Werner under the gift over provided for in his will. The executor of Mary J. Werner Pohl contends that under the 2d paragraph of Conrad Werner's will the four children named therein were given vested interests in his property, subject only to his widow's life use, and that upon her death they became absolutely entitled to the property then remaining, and acquired interests therein capable of being disposed of immediately and as they desired; that Mary J. Werner Pohl's interest passes under her will and is to be distributed according to the terms thereof. The administrators contend that the said share to which she became entitled upon Anna Werner's death, not actually having been received by her prior to her death without leaving issue, passes, not under her will and as a part of her estate, but rather, under the limitation over contained in the Conrad Werner will, to the surviving children of Conrad Werner. They claim that the testator intended that the property should be kept in the Werner family and that its enjoyment should be restricted to his wife and children and his children's issue. The answer to the question is to be found in the testator's intent. We must look for it in the language of the will read in its entirety and particularly in the 14th paragraph read in connection with the 2d, 5th and 16th paragraphs. Did the testator intend that the gift over should take effect if any of his said children should die without leaving issue before the actual physical receipt by such child of his or her share of the estate without reference to any fixed time when such share

should become due and payable, or did he mean it to take effect if such death should occur before his said child should become entitled to receive such share, that is, before it should become due and payable and before he or she could enforce such payment? He used these words: " Should any of my said children die without leaving issue before he or she receives his or her full share of my estate as above provided, I give devise and bequeath the share of such child to the survivors to be divided equally among them in the manner mentioned in the second provision hereof." He says, " before he or she receives his or her full share of my estate as above provided." In the 2d and 5th paragraphs he had provided that whatever remained of his estate upon the death of his widow should then be divided equally among his children. In the 2d paragraph, after providing for his widow's life estate, he says, " and on her death I give and devise and bequeath the said real estate or such thereof as may then be remaining to my children Mary J. Werner, Hattie M. Werner, George T. Werner and Ruth M. Werner to be equally divided among them share and share alike, the children of a deceased child taking the share their parent would have taken if living." In the 5th paragraph he directs the disposition to be made of his personal property during his widow's lifetime, and then says, " and on her death the principal to be divided equally among my children in the manner mentioned in the second provision thereof." In both the 2d and 5th paragraphs the time of the division among the children is fixed as of the date of the widow's death. It was then that each child was to receive his or her full share of the estate. It was then that such share was to be given to him or her absolutely and that he or she was to become entitled to receive it outright. Then the testator in saying, " before he or she receives his or her full share of my estate as above provided," meant the receipt of such share upon the death of the widow. The words " as above provided," in their setting meaning upon his said wife's death, seem to qualify the word " receives " and to lift it out of its literal meaning. By the use of the word " receives " in connection with, and qualified by, the words " as above provided," the testator could not have meant the actual physical receipt of the share whenever that receipt might take place. He definitely fixes the time by the use of the words " as above provided " as being the time of his widow's death, that is, as he puts it, " on her death." He must have meant the receipt which was to take place " on her death " whatever form that receipt was to take, whether it was the actual physical receipt, the actual delivery in hand, or the *de jure* receipt, the right to the receipt or

possession, that is being entitled to receive. It seems to me that he meant that if any of his children should die without leaving issue before such child should receive or be entitled to receive his or her full share at the time of his wife's death, then the limitation over should take effect. The use of the word "receives" in its literal sense is inconsistent with the use of the words "as above provided" when the words "as above provided" clearly refer to the division of the estate and the absolute ownership of the shares at the time of the wife's death. In order that the word "receives" may have its literal meaning here the words "as above provided" must necessarily be omitted as meaningless, and as CARDOZO, J., says in *Matter of Buechner* (226 N. Y. 440, at p. 443), "Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. Excision is a ' desperate remedy ' (*Adams* v. *Massey*, 184 N. Y. 62, 69). It is ' only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction have failed ' (*Van Nostrand* v. *Moore*, 52 N. Y. 12, 20)." We have not reached the "last resort" stage in this interpretation or construction and the "desperate remedy" of excision is not available. Any apparent inconsistency in the language of this 14th paragraph is easily reconciled by taking the word "receives," not in its literal sense of actual physical receipt, but in the sense of being entitled to receive or having the right to receive. That construction is in harmony with the "definite rule" laid down in *Manice* v. *Manice* (43 N. Y. 303, 369) (RAPALLO, J., writing), and quoted with approval and followed in *Finley* v. *Bent* (95 N. Y. 364), where the words "before the full payment of the whole of his or her share" were held to mean before the share became payable. Likewise, here, the words "before he or she receives his or her full share" must be held to mean before he or she becomes entitled to receive such share, "as above provided," that is, at the time of the widow's death. *Finley* v. *Bent* (*supra*) seems to be decisive of the issue here. In that case the testator devised and bequeathed his residuary estate, real and personal, to his executors in trust, to sell the real property as soon as possible and to divide and dispose of the net proceeds of said residue as follows: To invest and keep invested $10,000 for the benefit of his wife, and without delay to divide the remainder into three shares, one for each of his three children, Samuel, Elizabeth and Abby, to invest the same separately, one for each child, and to pay to each child the income from his or her share as it accrued, and from the principal $7,000, $5,000 and the balance, one year, three years, and five years respectively after the testator's death. He then provided: "Should either of my children die before the

full payment of the whole of his or her share of such residue, then my executors shall pay the share of the child so dying, or so much thereof as shall then remain unpaid, to his or her lawful issue then surviving, and should such child have no lawful issue, then to pay over and divide his or her share then remaining unpaid to and among my children then living, and the lawful issue of such of them as may be then deceased, in equal proportions share and share alike, such issue to receive the same share their parents would have been entitled to if then living." The daughter Abby died more than five years after her father's death. An infant son survived her. A part of the testator's real property had not then been converted and no part of it had been transferred to her. The question before the court was " whether her interest in the proceeds of that real estate passed under the will to her son, or whether it passes as a part of her estate to her personal representative." It was held that it passed as a part of her estate to her personal representative and not under the will to her son; that she had become entitled to receive it in full at the expiration of five years from the date of her father's death; and that by reason of her death thereafter, but before she had actually received it, that is, before it had been actually paid over to her in hand, the limitation over to her lawful issue did not take effect. EARL, J. (at p. 368), cites *Manice* v. *Manice* (43 N. Y. 303, 369) with approval and says " and there the general rule was laid down that ' a limitation over, to take effect in case of the death of the legatee before he has received his share, does not take effect, if the legatee lives to become entitled to it, though he die before it has been paid.' The words ' full payment ' must be held to have reference to the payment of the installments which were required to be made; one installment at the end of one year, and another at the end of three years, and the balance at the end of five years. The testator did not mean, according to the construction of such language given in the cases, that the bequest should go over, in case, for any reason, payment had been delayed beyond the five years; but it was only in case she died before any of it was payable, or after a portion of her share had been paid, and before full payment could be made, that it should go over. While the intention of the testator is not entirely free from doubt, this construction seems to be most in accord with the authorities, and makes a definite rule which it is better and safer to follow." It was there claimed that the words " before full payment " meant before actual physical full payment, before the money was actually paid in hand to the child, whether it was payable or not, but that contention was rejected by the court, which refused to so hold. *March* v. *March* (186 N. Y. 99) is cited

by the administrators as a decisive authority for their contention. I do not so find it. The question there was, not whether the limitation over took effect because the testator's son, Frank P. March, after having become entitled to receive his legacy, died before he had actually received it, but rather when he became entitled to receive it, and whether the limitation over took effect by reason of his having died before, and not after, he became entitled to receive it. HAIGHT, J. (at p. 106), says: "But no one contends that actual physical payment of the fund into the hands of the legatee is necessary. That is not the question here presented. Of course, executors and administrators cannot change the rights of parties by improper litigation. No such question has been presented in this case. * * * The question in this case is, when did the fund become due and payable to Frank; when could he have maintained an action against the trustees to recover his share of the proceeds of the real estate. Under the will they were required to sell at such times and on such terms as was proper. The fund derived from the sale was then to be distributed in the manner specified in the will. It was then that Frank's share became due and payable; then he was entitled to have it in possession; then he could have maintained an action to recover it. But when that time arrived, as we have seen, he had died, and under the terms of the will his right thereto passed to his only surviving child." And at page 116 he says: "The question presented by this case is as to the effect of the death before the legacy becomes due and payable, before the time that the legatee has the right to demand its payment or maintain an action therefor." At page 111 he says: "In *Sampson* v. *Sampson* (L. R. [1 Ch. Div. 1896] 630), after referring to the cases in which there has occurred a gift over on the death of a legatee before actually receiving his legacy, STERLING, J., says: ' These cases are not entirely consistent among themselves; but this at least they establish — that whether or not a testator can effectually cause a vested gift to be divested before it has actually come to the hands of the legatee, such an intention ought not to be attributed where the words are not clear; and in cases where the words are susceptible of such an interpretation, the court has held that the period over which the operation of a divesting clause of this kind is to extend ought not to be held to continue beyond that at which the legacy is *de jure* receivable.' " And then on page 119 he says: "It may further be conceded that under the provisions of a will containing a gift over in case of the death of a legatee before payment, that actual payment is not essential in order for it to vest absolutely in a legatee; that under the authority of *Sampson* v. *Sampson* (*supra*) the divesting clause ought not to extend

beyond the period in which the legacy is *de jure* receivable, or becomes due and payable, thus avoiding the power of an executor, through delay, caprice or accident, from preventing an absolute vesting of a legacy. With this limitation no reason is apparent, either in law, public policy or morals, why the testator may not make his bequests subject to a provision, clearly and definitely stated, that in case his legatee should die before his legacy become due and payable under the administration of his estate, it shall go over to the child or children of such deceased legatee, and thus prevent its going to the creditors of the legatee or to strangers to the testator or to his blood. I consequently conclude that Frank took a contingent estate, which would become vested absolutely in case he lived until he was entitled to it in possession, or until it became due and payable to him, subject to be divested in case of his death before that time, and he having so died, his share passed over to his daughter under the will of his father." The facts and the necessary provisions of the will are set forth in the opinion. The wording in that case was " before the conveyance and payment to him of the share of my estate herein given to him; " and it was held that by those words the testator meant before he had a right to the conveyance and payment, before the legacy became due and payable to him, before he had the right to demand its payment or to maintain an action therefor, before the legacy was *de jure*, not actually, receivable.

In both the *March* case and the *Finley* v. *Bent* case the determining factor was, not when the legacy was actually paid or actually received, but when the legatee became entitled to its payment or entitled to receive it. That was the dividing line. If the legatee died before that time the gift over took effect. If he was living at that time and died thereafter but before actually receiving the legacy the gift over did not take effect. HAIGHT, J., cites the *Finley* v. *Bent* case with approval and at pages 116 and 117 says that it " is an authority in support of the judgment " in the *March* case which was affirmed. There is no conflict between *Finley* v. *Bent* (*supra*) and *March* v. *March* (*supra*). Both are in complete harmony with and support the rule laid down in *Manice* v. *Manice* (*supra*) " that a limitation over to take effect in case of the death of the legatee before he has received his share, does not take effect, if the legatee lives to become entitled to it, though he die before it has been paid."

The case here at bar is precisely within that rule and is determined by it. Mary J. Werner Pohl was given a legacy payable to her on the widow's death. A limitation over to the surviving children of the testator was to take effect in case of her death

without issue before she received her share. She survived the widow's death and thus became entitled to her legacy, but died before it was paid to her. Whether or not her share vested, or, if vested, was subject to being divested prior to her mother's death is not material here. She survived her mother. When her mother died the share then vested absolutely. It then was, or became, due and payable. She was then entitled to its possession and could maintain an action or proceeding to compel its payment. She was entitled to receive it and to dispose of it as she wished, by will or otherwise. It was not subject to being divested by her death thereafter, without issue, prior to its actual receipt by her. The rule and authorities above mentioned so hold. The rule seems to me to be in accord with the apparent intent of the testator. The said share, therefore, passes as a part of her estate to her personal representative for distribution under her will, and not to the surviving children of Conrad Werner under the limitation over contained in his will. As Mary J. Werner Pohl lived until after she had become entitled to receive the legacy, that is, until after it became due and payable to her, the gift over did not take effect. This share belonged to her absolutely and was subject to her testamentary disposition. I hold as above stated.

Submit decree accordingly.